UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **GOSIGER MACHINE TOOLS, LLC,** 108 McDonough St., Dayton, OH 45402,       Plaintiff, v. **FIVE AXIS INDUSTRIES, INC.,** 3705 166th Pl NE, Arlington, WA 98223,    **ALSO SERVE:**    Erick Ellstrom    1535 NW Ballard Way    Seattle, WA 98107-4712,       Defendant. | Case No. _____ Judge _____ **COMPLAINT FOR MONEY DAMAGES AND OTHER RELIEF** |

Plaintiff Gosiger Machine Tools, LLC ("Gosiger") states for its Complaint against Defendant, Five Axis Industries, Inc. ("Five Axis"), as follows:

## PARTIES

1. Gosiger is a limited liability company that is wholly owned by its single member, Gosiger Holdings Inc. ("Gosiger Holdings"). Gosiger Holdings is a corporation organized under Ohio law with its principal place of business at 108 McDonough Street, Dayton, Ohio 45423. Gosiger supplies automated machining tools to help engineers and technicians meet manufacturing needs and distributes machining tools manufactured by Okuma.

2. Five Axis is a for-profit corporation organized under the laws of the State of Washington with its principal place of business located at 1535 NW Ballard Way, Seattle, Washington, 98107-4712. Five Axis is a corporation that specializes in machining parts for various industries.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1332 because Gosiger's sole member, Gosiger Holdings, and Five Axis are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. This case arises out of Gosiger's sale to Five Axis of an Okuma VTM-1200YB machine, which sale is governed by Gosiger's Terms and Conditions of Sale ("Terms and Conditions"). (Exhibit A). Section 12 of the Terms and Conditions requires that any court action pertaining to the sale be brought in federal or state courts having situs in the Southern District of Ohio. Pursuant to the Terms and Conditions, Five Axis consented to personal jurisdiction in the Southern District of Ohio.

5. Venue in this action is proper pursuant to 28 U.S.C. § 1391 and the Terms and Conditions because the parties agreed that this action must be brought in a federal or state court having situs in the Southern District of Ohio, and because Five Axis is subject to personal jurisdiction in this district.

## FACTS

6. Between September 2021 and November 2021, Gosiger and Five Axis negotiated the purchase of two Okuma VTM-1200YB machines. The Okuma VTM-1200YB is a multi-functional machine capable of large turning and milling requirements for the machining of complex parts.

7. During negotiations with Gosiger, Five Axis did not reveal its intended uses for the Okuma VTM-1200YB machines. Rather, Five Axis provided Gosiger with general part size and shape parameters. Because Gosiger was not aware of Five Axis's intended uses for the machines,

Gosiger never advised or represented to Five Axis that the capabilities of the Okuma VTM-1200YB machine were consistent with Five Axis's intended uses.

8. On October 7, 2021, Gosiger sent a proposal to Five Axis for one Okuma VTM-1200YB machine ("Machine 1") under Quote Number QUO-12924-3EVGU8-1. (Exhibit B). The proposal included a special price of $994,875, and required a 10% down payment with the remaining balance owed NET 25 days. The proposal stated that the quote was good for 30 days and subject to Gosiger's Terms and Conditions.

9. Attached to the proposal were Gosiger's Terms and Conditions applicable to every sale it makes of goods, products, or equipment. Among other things, the Terms and Conditions provide that:

   a. "Any sale of goods, products or equipment (collectively, "Goods") described in the attached proposal, contract, invoice, or similar ordering document (collectively, "Order") by Gosiger Machine Tools, LLC or its subsidiaries ("Seller") to the recipient or buyer identified on the applicable Order ("Buyer") is governed by the following terms and conditions of sale ("Terms")." (Introduction);

   b. "Seller expressly rejects any additional or different terms or conditions or other writing proposed by Buyer, and any effort by Buyer to negate these Terms. No modification or waiver of these Terms will be effective against Seller unless specified in a writing which is signed by an officer of Seller. If these Terms are submitted in response to or in acceptance of any request for proposal or similar form from Buyer, acceptance is conditional on Buyer's assent to the exclusive application of these Terms." (Introduction);

c. "Buyer's acceptance of any Goods from Seller, or delivery of any payment to Seller for Goods, shall conclusively be deemed an assent to all of Seller's Terms in connection with the sale of Goods, and, except for terms relating to quantity and type of Goods and/or requested delivery date, any ordering document proposed or issued by Buyer shall be disregarded and of no force or effect." (Sec. 1);

d. Seller "HEREBY DISCLAIMS AND THERE SHALL BE EXCLUDED FROM THE RELATIONSHIP BETWEEN BUYER AND THE SELLER, ALL OTHER WARRANTIES . . . INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Sec. 3);

e. "In any proposal comprising a quotation by Seller for any Good or part thereof that is based on Buyer's requirements as Seller understands them, Buyer acknowledges that Buyer alone has determined that materials purchased or processed will suitably meet the requirements of Buyer's intended use" (Sec. 6);

f. "Interest (at the rate of one and one-half percent (1.5%) per month (18% annual percentage rate) or the maximum legal rate, whichever is lower) will be charged to Buyer on all amounts owed to Seller hereunder that remain outstanding after twenty-five (25) days." (Sec. 8);

g. "Buyer agrees to pay all collection expenses (including, without limitation, all court costs, legal and administrative expenses, and attorneys' and other fees) paid or incurred by Seller to recover all amounts due to Seller." (Sec. 8);

h. "To secure the full and prompt payment and performance of any and all debts, liabilities, agreements, covenants, warranties, obligations, and amounts from time

4

to time now and hereafter owing by Buyer to Seller and/or to any of Seller's affiliates (the 'Obligations'), Buyer . . . grants to Seller, for itself and as agent for each and all of its affiliates (as the case may be, the 'Secured Party') a continuing first priority security interest in and lien against any Good or part thereof tendered for delivery to Buyer by Seller or any of Seller's affiliates, together with any and all additions, accessions and replacements thereto and proceeds and products thereof, whether now owned or existing or hereafter acquired or coming into existence (collectively, the 'Collateral')." (Sec. 11);

i. "Upon the happening of any of the following events or conditions: (i) default by Buyer in the payment or performance of any of the Obligations . . . or (vii) Secured Party deems itself insecure, then Secured Party may, at its sole option, declare the entire amount of the Obligations then outstanding due and payable at once and, in addition to all other rights and remedies provided herein or otherwise applicable to it, exercise all rights and remedies of a secured party under applicable law." (Sec. 11);

j. "The agreement between Buyer and Seller and the Terms shall be construed to be between merchants and shall be governed by, and construed in accordance with, the laws of the State of Ohio, without application of the conflict of law principles thereof." (Sec. 12.);

k. "Any court action which may be brought by any party pertaining to any Order, quote or these Terms shall be brought in federal or state courts having situs in the Southern District of Ohio." (Sec. 12);

  l. "The Terms and the Order(s) to which these Terms are attached constitute the entire and only agreement by and between Buyer and Seller respecting the subject matter of Orders placed by Buyer to Seller and supersede all prior agreements or understandings, whether written or oral." (Sec. 17.).

10. On November 18, 2021, Five Axis sent Gosiger Purchase Orders 2182 and 2183 for the purchase of two Okuma VTM-1200YB machines. Each Purchase Order listed a price of $994,875. (Exhibit C). Under "Terms," both Purchase Orders stated "As per QUOTE." The purchase orders included payment terms for a down payment of 20%, a payment of 30% upon arrival of the machine at Five Axis, a payment of 35% after installation and training, and a payment of 15% after the machine runs "trouble free" for 30 consecutive days.

11. On November 22, 2021, Gosiger sent a proposal to Five Axis for a second Okuma VTM-1200YB machine ("Machine 2") under Quote Number OUO-12924-3EVGU8-2. (Exhibit D). This proposal included a special price of $994,875 and required a 10% down payment with the remaining balance owed NET 25 days. The proposal stated that the quote was good for 30 days and subject to Gosiger's Terms and Conditions, which again were attached to the proposal.

12. On January 7, 2022, Five Axis submitted a revised Purchase Order 2182 for Machine 1. (Exhibit E). The Purchase Order listed a price of $994,875. Under "Terms," the Purchase Order stated "As per QUOTE." The purchase order included payment terms for a down payment of 15% before shipping with the 85% balance due after installation is complete and the machine is operational.

13. On January 17, 2022, Gosiger sent a revised proposal for Machine 2 to Five Axis under Quote Number OUO-12924-3EVGU8-2. (Exhibit F). The proposal included a special price of $994,875, and required a 15% down payment with the remaining balance owed NET 90 days.

The proposal also included a term providing "[u]pon arrival at Port of Entry – Customer has the option to accept or cancel the purchase of this machine. Acceptance will proceed as a normal purchase with 15% down payment, NET 90 day terms. Cancel at this point will initiate credit of initial 'modest' down-payment." The proposal stated that the quote was good for 30 days and subject to Gosiger's Terms and Conditions, which again were attached to the proposal.

14. On or about January 24, 2022, Five Axis submitted Purchase Order 2183 rev 1 for Machine 2. (Exhibit G). Under "Terms," the Purchase Order stated "As per QUOTE." The Purchase Order listed a price of $994,875. Consistent with Gosiger's January 17, 2022 proposal, the purchase order included the following term: "[u]pon arrival at Port of Entry – Customer has the option to accept or cancel the purchase of this machine. Acceptance will proceed as a normal purchase with 15% down payment, NET 90 day terms. Cancel at this point will initiate credit of initial 'modest' down-payment."

15. On January 24, 2022, Gosiger emailed Erick Ellstrom, Five Axis's Vice President of Engineering, asking Ellstrom to confirm, by replying "yes" to all, that Gosiger's January 17, 2022 proposal for Machine 2 and Five Axis's Purchase Order 2183 rev 1 for Machine 2 were approved. On January 25, 2022, Ellstrom replied as follows to this email: "Yes PO is good". (Exhibit H).

16. On or about January 20, 2022, Five Axis paid $148,231.25 for the down payment for Machine 1.

17. On or about February 1, 2022, Machine 1 was damaged in transit to Five Axis. In response, Gosiger arranged for the delivery of another Okuma VTM-1200YB machine ("Consignment Machine") to be used by Five Axis pending the arrival of Machine 2. The Consignment Machine was delivered to Five Axis on March 15, 2022.

18. On May 23, 2022, Machine 2 was delivered to Five Axis. Installation of Machine 2 was completed and Machine 2 was operational on June 30, 2022.

19. On May 24, 2022, Gosiger applied the $148,231.25 down payment that Five Axis had paid for Machine 1 as the down payment for Machine 2.

20. Between May 2022 and March 2023, Five Axis continued to use both the Consignment Machine and Machine 2.

21. On May 24, 2022, Gosiger submitted an invoice to Five Axis reflecting the remaining $846,643.75 balance owed on Machine 2.

22. On March 29, 2023, Gosiger removed the Consignment Machine from Five Axis.

23. Between May 2022 and July 2023, Five Axis claimed that Machine 2 was not capable of performing Five Axis's intended uses. During that time period, Gosiger sent technical personnel and Okuma technicians to Five Axis to address Five Axis's claim.

24. On July 26, 2023, Okuma America sent a letter to Gosiger and Five Axis regarding Machine 2. The letter reported that Okuma America and Gosiger Northwest had made multiple visits to Five Axis's location to investigate the purported issues with the machine. Okuma America concluded that the machine was performing as designed, within factory specifications, and with no issues. (Exhibit I).

25. As of the filing of this complaint, Five Axis has failed to pay Gosiger the balance owed on Machine 2 and therefore has defaulted on its obligations under the terms of the sale.

26. On October 9, 2023, Gosiger attempted to repossess Machine 2 based on its rights as a secured party under Ohio law. Five Axis denied Gosiger access to Machine 2 and prevented Gosiger from repossessing Machine 2.

## COUNT I – BREACH OF CONTRACT

27. The allegations contained in the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

28. Gosiger and Five Axis entered into an agreement together under which Gosiger agreed to sell Machine 2 to Five Axis and under which Five Axis agreed to pay Gosiger the full agreed-upon price.

29. Gosiger shipped Machine 2 to Five Axis and installed Machine 2. Gosiger has fulfilled all of its obligations under the agreement.

30. Five Axis accepted Machine 2 and used it.

31. Five Axis has not paid the full amount owed for Machine 2.

32. Five Axis has breached the agreement with Gosiger.

33. Five Axis is obligated to pay Gosiger the full outstanding amount of $846,643.75, plus interest on this amount at the rate of 1.5% per month for each month that the balance remains due and owing.

34. As a direct and proximate result of Five Axis's breach, Gosiger is entitled to damages in an amount of at least $846,643.75, incidental damages, accrued interest, and the cost of all collection expenses, including attorney fees.

## COUNT II – UNJUST ENRICHMENT

35. The allegations contained in the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

36. Gosiger provided Machine 2 to Five Axis with the reasonable expectation that Five Axis would pay Gosiger for Machine 2 and that Machine 2 was not provided to Five Axis gratuitously.

37. Based on representations by Five Axis that Five Axis would pay the full amount for Machine 2, Gosiger delivered Machine 2 to Five Axis, conferring a benefit to Five Axis.

38. Gosiger requested that Five Axis pay the rest of the amount due on Machine 2.

39. Five Axis accepted and used Machine 2 and thus had actual knowledge of the benefit Gosiger had conferred.

40. By retaining the benefit of Machine 2 without paying for it, Five Axis has been unjustly enriched and Gosiger is entitled to collect the full value of Machine 2's purchase price.

41. As a direct and proximate result of Five Axis's unjust enrichment, Gosiger is entitled to damages in an amount of at least $846,643.75, plus all interest and the cost of all collection expenses, including attorney fees.

## COUNT III – CONVERSION

42. The allegations contained in the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

43. Under the terms of the parties' agreement, upon Five Axis's default in payment or performance of its obligations, Gosiger was entitled to exercise all the rights and remedies of a secured party under the applicable law, including taking possession of collateral without judicial process if acting without breach of the peace. R.C. § 1309.609(A).

44. By keeping Machine 2 without paying the full outstanding amount on it, Five Axis has wrongfully converted Gosiger's property as its own.

45. At the same time, by not permitting Gosiger to recover Machine 2, Five Axis has wrongfully converted Gosiger's property as its own.

46. As a direct and proximate result of Five Axis's conversion, Gosiger is entitled to damages in an amount of at least $846,643.75, plus interest and the cost of all collection expenses, including attorney fees.

### COUNT IV – DECLARATORY JUDGMENT

47. The allegations contained in the preceding paragraphs are incorporated by reference herein with the same force and effect as if set forth in full below.

48. A real and justiciable controversy exists between the parties regarding whether Five Axis has defaulted on its obligations under the agreement and Gosiger is entitled to repossess Machine 2 based on that default.

49. Gosiger is entitled to a declaration that: (1) Five Axis is in default of its obligations under the terms of sale of Machine 2; and (2) Gosiger is entitled to repossession of Machine 2 under the Terms and Conditions, R.C. § 1309.609(A), R.C. § 2737 *et seq.*, and Fed. R. Civ. P. 64.

50. A declaratory judgment will terminate the uncertainty surrounding this dispute and controversy.

**WHEREFORE**, by virtue of the foregoing acts complained of, Gosiger requests the following relief:

A. Judgment against Defendant for breach of contract in an amount to be fully proven at or before trial for the damages described herein, together with all accruing interest, costs, and any and all other relief that may apply;

B. Judgment against Defendant for unjust enrichment in an amount to be fully proven at or before trial for the damages described herein, together with all accruing interest, costs, and any and all other relief that may apply;

  C. Judgment against Defendant for conversion in an amount to be fully proven at or before trial for the damages described herein, together with all accruing interest, costs, and any and all other relief that may apply;

  D. Judgement declaring that Five Axis is in default of its obligations under the terms of the sale of Machine 2 and that Gosiger is entitled to repossess Machine 2;

  E. Prejudgment and post-judgment interest;

  F. Award of reasonable attorneys' fees associated with this action; and

  G. Grant of such other and further relief as the Court deems appropriate.

## JURY DEMAND

Gosiger demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *Dominick S. Gerace*
Dominick S. Gerace (0082823)
Benjamin C. White (0098232)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
dgerace@taftlaw.com
bwhite@taftlaw.com

*Trial Attorney for Plaintiff Gosiger Machine Tools, LLC*